# Recess Appointments Issues

[The following memorandum reviews a number of legal and constitutional issues relating to the President's power to make appointments during a recess of the Senate, concluding that there have been no developments which call into question the conclusions of a 1960 Attorney General opinion, 41 Op Att'y Gen. 463. It also contrasts the language, effects and purposes of the Pocket Veto and Recess Appointments Clauses.]

October 25, 1982

## MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

This is in response to your memorandum regarding the recess appointments issues. That memorandum's appendix, entitled "Legal Issues re: Recess Appointments," addresses a number of questions which may arise with respect to appointments during the current Senate recess. The current recess is an intrasession recess of the second session of the 97th Congress of almost two months duration. The Senate adjourned on October 2, 1982 to a date certain, November 29, 1982. *See* H. Con. Res. 421, 97th Cong., 2d Sess., 128 Cong. Rec. S13410, and 128 Cong. Rec. D1325 (daily ed. Oct. 1, 1982). You have asked us to (a) confirm that there have been no developments that would call into question the validity of the (Acting) Attorney General's 1960 opinion on recess appointments (41 Op. Att'y Gen. 463), and (b) advise whether we see any problem with the appendix's summary of the pertinent legal rules governing the exercise of recess appointment authority under Article II, § 2, clause 3 of the Constitution, and of the effects of the provisions of 5 U.S.C. § 5503, setting limits on the circumstances under which recess appointees may be paid.

With respect to your second question, we believe that the legal summary contained in the appendix to your memorandum, in general, correctly states the applicable legal principles. As you note, the key provisions governing recess appointments are Article II, § 2, clause 3 of the Constitution[1] and 5 U.S.C.

---

[1] Article II, § 2, clause 3 provides.

The President shall have Power to fill up all Vacancies that may happen during the Recess of the Senate, by granting Commissions which shall expire at the End of their next Session.

§ 5503 (1976).[2] It has long been established that Article II, § 2, clause 3 gives the President the power to fill vacancies by recess appointments both when the vacancies occur during the recess and when they existed prior to the recess but had not been filled, either because a nomination had not been made or because a nominee had not been confirmed prior to the adjournment. 41 Op. Att'y Gen. at 465. However, as you note, § 5503(a) prohibits payment of recess appointees if the vacancies to which they are appointed existed while the Senate was in session, unless one of three conditions contained in that subsection is satisfied.

We agree that:

1. Recess appointments may be made during extended intrasession recesses of the Senate, like the present recess of well over 30 days duration, and such appointees may be paid under § 5503 where that section's conditions are satisfied. *See* 41 Op. Att'y Gen. at 466–67, and the authorities cited therein. In this connection, it is perhaps worth repeating a point made in the 1960 Attorney General opinion. 41 Op. Att'y Gen. at 472–73, n.13. The Comptroller General has interpreted § 5503(a)(2) as prohibiting payment only where the person receiving the recess appointment was already serving under a prior recess appointment. 52 Comp. Gen. 556, 557 (1973); 36 Comp. Gen. 444 (1956). Thus, if someone other than a prior recess appointee whose nomination was pending at the time of adjournment is appointed, § 5503(a)(2) does not bar payment.

2. The prevailing view is that the language "next Session" in Article II, § 2, clause 3 refers to the session following the adjournment *sine die* of the current one. Thus, a recess appointment made during an intrasession recess expires upon the adjournment *sine die* of the session of Congress which follows the adjournment *sine die* of the session during which the intrasession recess occurs. It follows that, at least in the absence of a special session, recess appointments made during the current recess (or prior recesses of the current session) would expire when the first session of the 98th Congress adjourned *sine die*. 41 Op. Att'y Gen. at 465. The Comptroller General has ruled that recess appointees may be paid consistently with § 5503 for the same period. 28 Comp. Gen. 30 (1948).

3. In the event the 97th Congress were recalled for a special session after the adjournment *sine die* of its second session, an unsettled question might arise

---

[2] Section 5503(a) prohibits paying the salary of a recess appointee to an office required by law to be filled by and with the advice and consent of the Senate, where the vacancy in the office existed while the Senate was still in session, unless one of three conditions is met:

> (1) if the vacancy arose within 30 days before the end of the session of the Senate;
> (2) if, at the end of the session, a nomination for the office, other than the nomination of an individual appointed during the preceding recess of the Senate, was pending before the Senate for its advice and consent; or
> (3) if a nomination for the office was rejected by the Senate within 30 days before the end of the session and an individual other than the one whose nomination was rejected thereafter receives a recess appointment.

Section 5503(b) requires a nomination to fill the office of a recess appointee who has been paid under one of these three exceptions to be submitted to the Senate within 40 days after the beginning of its next session.

Present 5 U.S.C. § 5503 is the 1966 codification of former 5 U.S.C. § 56, 54 Stat. 751 (1940). *See* Pub. L. No. 89–554, 80 Stat. 378, 475 (1966). The Senate and House reports both state simply that "[s]tandard changes are made to conform with the definitions applicable and the style of this title as outlined in the preface to the report." H.R. Rep. No. 901, 89th Cong., 1st Sess. 85 (1965); S. Rep. No. 1380, 89th Cong., 2d Sess. 105 (1966). Thus, any changes in wording since the times of the 1960 Attorney General opinion and the post-1940 Comptroller General's opinions would appear to have been made without any intention to make substantive changes.

whether appointments made during the present election recess would expire at the end of the special session, or at the end of the first session of the 98th Congress, *i.e.*, whether the "next Session" under Article II, § 2, clause 3 was the special session or the first session of the 98th Congress. A parallel unsettled question might arise with respect to their pay under § 5503(a). We agree that a special session should probably be viewed as the "next Session" for purposes both of the constitutional provision and § 5503(a).

4. Section 5503(b) requires the submission of a nomination to the Senate for any post filled by a recess appointment covered by § 5503(a) "not later than 40 days after the beginning of the next session of the Senate." The effect of a violation of § 5503(b) is to terminate the pay of the recess appointee. 52 Comp. Gen. at 557–58. It remains unsettled whether the language "next session" in § 5503(b) refers to a post-recess reconvening of the same Congress, or to the beginning of the session of Congress which succeeds the adjournment *sine die* of the current one. We agree that the safer course is to adhere to the advice of the 1960 Attorney General opinion and submit nominations of recess appointees to the Senate when it reconvenes after its intrasession election recess. *See* 41 Op. Att'y Gen. at 477.[3] We believe this is the safer course even though the post-recess session of the Senate is likely to last less than 40 days, and it might plausibly be argued that compliance with § 5503(b) is unnecessary where the Senate adjourns before the President is required to submit a nomination. If a nomination is submitted, no question can arise whether the recess appointee is entitled to be paid under § 5503(b). If § 5503(b) is violated, of course, a recess appointee may continue to serve, but cannot be paid after the 40th day following the beginning of the next session until he is nominated and confirmed by the Senate, though his right to pay would relate back to the 41st day if he were so nominated and confirmed. 52 Comp. Gen. at 558. As noted in the 1960 opinion, 41 Op. Att'y Gen. at 478–79, the Comptroller General has interpreted § 5503(a)(2) as not terminating the pay of such subsequently nominated recess appointees prior to the time they would otherwise have terminated. 28 Comp. Gen. 121 (1948). *I.e.*, § 5503(b)(2) will not operate to terminate the pay of recess appointees when the Senate next adjourns after reconvening on November 29 as a result of submitting their nominations.

5. Since the Senate adjourned to a date certain and not *sine die* existing recess appointments made prior to the current recess will continue to be valid through the current recess. The adjournment *sine die* of the 97th Congress after it reconvenes on November 29, 1982, will terminate those existing recess appointments which were made prior to the beginning of the second session of the 97th Congress.

6. When the Senate reconvenes on November 29, 1982, questions may arise with respect to resubmission of the nominations of persons holding recess appointments. We agree that the better course is to submit the nominations of

---

[3] The 1960 Attorney General opinion recommends the submission of nominations for those who received recess appointments to vacancies which opened after the adjournment of the Senate, even though § 5503 does not cover those appointments. 41 Op. Att'y Gen. at 478 n.21.

prior as well as current recess appointees after the Senate reconvenes in November unless there has been unanimous consent to suspend Standing Rule XXXI(6) of the Senate with respect to their nominations. Standing Rule XXXI(6) provides:

> Nominations neither confirmed nor rejected during the session at which they are made shall not be acted upon at any succeeding session without being again made to the Senate by the President; and if the Senate shall adjourn or take a recess for more than thirty days, all nominations pending and not finally acted upon at the time of taking such adjournment or recess shall be returned by the Secretary to the President, and shall not again be considered unless they shall again be made to the Senate by the President.[4]

Our search of the Congressional Record indicates that there was unanimous consent to suspend the operation of that rule with respect to all but seven pending nominations.[5] Resubmission of the one recess nomination would avoid the risk that § 5503(b) might be interpreted to terminate his pay. Section 5503(a)(2) has been interpreted as not risking premature termination of the pay of recess appointees as a result of such submissions. *See* paragraph (5) *supra* and 41 Op. Att'y Gen. at 478–79, *citing* 28 Comp. Gen. 121 (1948).

With respect to your first question, we agree that there have been no developments which call into question the validity of the pertinent conclusions in the 1960 opinion of Acting Attorney General Walsh. As your memorandum notes, the two intervening reported cases involving recess appointments are not inconsistent with either the 1960 opinion or your appendix's summary.[6] Also, two recent cases challenging recess appointments made by President Reagan do not cast any doubt on the conclusions of your summary.[7]

---

[4] Senate Manual 1981, at pp. 58–59 (Senate Doc. No. 97–1)

[5] 128 Cong. Rec. S13269 (daily ed. Oct. 1, 1982). Those seven nominations were
Harvey J. Staszewski, Jr. To be a member of the U.S. Metric Board; Frederic V. Malek, to be Governor, U S Postal Service; John Van de Water to be Chairman of the National Labor Relations Board; Wendy Borcherdt, to be Deputy Undersecretary for Intergovernmental and Interagency Affairs, Department of Education; and . . Robert A. Destro, . . . Constantine Nicholas Dombalis, . . . and Guadalupe Quintanilla, to be . . Member[s] of the Commission on Civil Rights.
Only Mr. Van de Water was a recess appointment. 17 Weekly Comp Pres Doc. 883 (Aug 13, 1981)

[6] *United States* v. *Allocco,* 305 F 2d 704 (2d Cir. 1962); *Staebler* v. *Carter,* 464 F Supp 585 (D D.C. 1979).
In the *Staebler* case, the District Court rejected a challenge to the recess appointment of his successor by a holdover member of the Federal Election Commission The Court stated, *inter alia:*
> There is nothing to suggest that the Recess Appointments Clause was designed as some sort of extraordinary and lesser method of appointment, to be used only in cases of extreme necessity.
> . . There is no justification for implying additional restrictions not supported by the constitutional language.
> Recess appointments have traditionally not been made only in exceptional circumstances, but whenever Congress was not in session
464 F. Supp at 597.
In *Allocco,* the criminal defendant unsuccessfully challenged the recess appointment of his trial judge The Second Circuit held that President Eisenhower had authority under the Recess Appointments Clause to fill the district court vacancy which occurred two days before the Congress adjourned *sine die* on August 2, 1955. The Court rejected the argument that the Recess Appointments Clause covers only vacancies which open during a recess 305 F.2d at 709–15.

[7] *Bowers* v. *Moffet,* Civil Action No. 82–0195 (D.D.C. 1982), was dismissed voluntarily without opinion after Judge Hart indicated that he intended to dismiss the case It involved, *inter alia,* a challenge to President Reagan's

Continued

We also do not believe that the two recent pocket veto cases cast any doubt on our conclusions. These two cases, *Kennedy* v. *Sampson*, 511 F.2d 430 (D.C. Cir. 1974), and *Kennedy* v. *Jones*, 412 F. Supp. 353 (D.D.C. 1976),[8] even if we agreed with the legal conclusions contained in them, which we do not,[9] would not call into question the conclusion in the 1960 Attorney General's opinion with respect to recess appointments. While the Pocket Veto and Recess Appointments Clauses deal with similar situations, that is, the President's powers while Congress or the Senate is not in session, their language, effects and purposes are by no means identical. First, the language of the two clauses differs significantly. The Pocket Veto Clause speaks of an adjournment of the Congress which prevents the return of a bill; the Recess Appointments Clause speaks of filling all vacancies during a recess of the Senate. Had the two clauses been intended to cover the same situation, it is reasonable to assume that they would have been worded more similarly. Even if "recess" and "adjournment" do not have clearly distinguishable meanings in the Constitution, an adjournment which prevents the return of a bill appears to be addressed to a different situation than is "a recess." Second, the effects of a pocket veto and of a recess appointment are different. Legislation which is pocket vetoed can be revived only by resuming the legislative process from the beginning. A recess appointment, on the other hand, results only in the

recess appointment of Kenneth E. Moffet to be Federal Mediation and Conciliation Service Director on January 11, 1982, during the intersession recess of the 97th Congress.

*McCalpin* v *Dana*, No. 82–0542 (D D.C. 1982), which was decided on cross motions for summary judgment in the District Court on October 5, 1982, involved a challenge to President Reagan's appointments of seven members of the Board of the Legal Services Corporation, also during the intersession recess of the 97th Congress in December and January of 1981 Although the President nominated nine of the appointees after the Senate convened for the second session, none of them has been confirmed. The Legal Services Corporation Act provides for appointment of the Board members by the President with the advice and consent of the Senate However, the Act contains no express provision for recess appointments, and also provides that the Board members are not Officers of the United States The Court concluded that the legislative history of the "Act reflects Congress' intent that the President should have no restraint imposed upon his power to make recess appointments to the LSC Board of Directors " *McCalpin* v *Dana*, slip op at 5 Neither the statute's declaration that the LSC Board members are not Officers of the United States nor congressional concern with the Board's political independence suggests a contrary conclusion:

> The ability to make recess appointments is a very important tool in ensuring that there is a minimum of disruption in governmental operations due to vacancies in office, . and there is no reason to believe that the President's recess appointment power is less important than the Senate's power to subject nominees to the confirmation process. In fact, the presence of both powers in the Constitution demonstrates that the Framers of the Constitution concluded that these powers should co-exist. The system of checks and balances crafted by the Framers remains binding and strongly supports the retention of the President's power to make recess appointments

*Id* at 14 The Court went on to say that had such a restraint on the President's recess appointments power been intended it would have been of doubtful constitutionality under the functional analysis of *Buckley* v *Valeo*, 424 U.S. 1, 124–43 (1976) (per curiam) *Id*. at 16.

[8] *Kennedy* v *Sampson* stated broadly that the Pocket Veto Clause of Article I, § 7, clause 2 of the Constitution does not apply to intrasession adjournments, however, the case involved a pocket veto made during an intrasession adjournment of only six days' duration In *Kennedy* v *Jones* the government entered into a consent judgment for the plaintiff in a case challenging the validity of two pocket vetoes: one, an intersession pocket veto, the other an intrasession pocket veto during an election recess of 31 days President Ford, at the time judgment was entered in the *Kennedy* v. *Jones* case, announced publicly he would not invoke his pocket veto powers during intrasession or intersession recesses where the originating House of Congress had specifically authorized an officer or other agent to receive return vetoes during such periods Department of Justice Press Release, Apr 13, 1976. President Reagan has not made any similar announcement

[9] Lifetime Communities, Inc is seeking to litigate the validity of President Reagan's intersession pocket veto of H.R. 4353 on rehearing in its New York bankruptcy proceeding now pending before the Second Circuit, No. 82–5505. Appellee, The Administrative Office of the U.S Courts, represented by the Civil Division of the Department of Justice, filed a response on September 27, 1982, agreeing that the newly raised pocket veto issue should be reheard on the merits by the panel

589

temporary filling of a position for a period prescribed by the clause itself. Finally, the purposes of the clauses are different. The Pocket Veto Clause ensures that the President will not be deprived of his constitutional power to veto a bill by reason of an adjournment of Congress. The Recess Appointments Clause enables the President to fill vacancies which exist while the Senate is unable to give its advice and consent because it is in recess. In light of the different wording, effects, and purposes of the two clauses, we do not believe the pocket veto cases should be read as having any significant bearing on the proper interpretation of the Recess Appointments Clause.

THEODORE B. OLSON
*Assistant Attorney General*
*Office of Legal Counsel*